■ RUSSELL FINLEY, Doing Business as FINLEY REAL ESTATE, Appellant, v EDGAR AMYOT et al., Respondents. [728 NYS2d 832] —Carpinello, J. Appeal from a judgment of the Supreme Court (Demarest, J.), entered November 6, 2000 in St. Lawrence County, upon a decision of the court in favor of defendants.

Plaintiff seeks a $15,600 real estate commission from defendants following the sale of their St. Lawrence County farm to Ernest Casner and Sharon Casner. Following a non-jury trial, Supreme Court found that plaintiff failed to prove by a preponderance of the evidence that he was entitled to a commission from this sale. Based upon our review of the record, we can discern no basis upon which to set aside this finding and accordingly affirm.

Although plaintiff and defendants had originally entered into a written listing agreement in August 1995, it expired by its own terms six months later. No subsequent written agreement was entered into by the parties. It was agreed, however, that plaintiff would continue his efforts to show the farm to interested buyers. In early August 1997, plaintiff showed the Casners, who lived out of State, numerous farms in the region, including defendants' farm. The following January, plaintiff and Ernest Casner (hereinafter Casner) went to defendants' home at which time Casner verbally offered $180,000 for the farm and its related equipment. According to the trial testimony of Casner and defendant Edgar Amyot, the offer was turned down.[1] It is undisputed, however, that an argument erupted at this time between Amyot and plaintiff. Both men were yelling loudly at each other and parted angry. Moreover, according to Casner and Amyot, plaintiff was told at this time that his services were no longer desired or needed by defendants (plaintiff denied that he was so informed).

When the Casners were in the area the following month attempting to negotiate a sale on another farm, they made an impromptu visit to defendants' home in an attempt to ascertain the asking price for the farm. According to Casner, he did not procure plaintiff's presence at this visit because of the prior disagreement between plaintiff and Amyot. During the visit, Amyot would not commit to any price nor were any terms of a potential agreement even discussed. Rather, the Casners and defendants just talked and got to know each other. According to defendants, before they would even consider negotiating a deal with the Casners, they needed to satisfy themselves that the Casners were viable purchasers and, in fact, owned all the real and personal property that they had represented they owned. Thus, defendants personally traveled to the Casners' Pennsylvania home for this purpose. After seeing their home and property, they told the Casners that they wanted $195,000 for the farm and equipment, which the Casners believed was a fair price. A sale was ultimately consummated in April 1998.

We begin by noting that "when a broker opens negotiations between parties but, failing to bring the customer to the terms specified by the owner, abandons them and the owner subsequently sells to the same person, the owner is not liable to the broker for commissions" (*Salzano v Pellillo*, 4 AD2d 789, 790).

---

1. At trial, although Casner and Amyot each testified that the verbal offer was rejected, plaintiff claimed that it was not rejected but that Amyot instead indicated that he had to discuss it with his wife "before he did anything."

In order for plaintiff to succeed on his claim that he was wrongfully deprived of a commission from the sale of defendants' farm, he needed to prove that he was the procuring cause of that sale; that is, he needed to prove that he was "a direct and proximate link, as distinguished from one that is indirect and remote, between the bare introduction [of the buyer and seller] and the consummation [of the sale]" (*Greene v Hellman*, 51 NY2d 197, 206; *see*, *Miller Realty Corp. v Carpenter*, 41 AD2d 564). Simply "call[ing] the property to the attention of the ultimate purchaser" is insufficient to make out a case for a commission (*Greene v Hellman, supra*, at 205).

While there is no dispute that plaintiff alerted the Casners to the availability of defendants' farm (as well as numerous other farms in the area) and also brought Casner and Amyot together on that one occasion in January 1998, Supreme Court could rationally conclude that he was by no means responsible for a meeting of the minds between these parties (*see*, *Gabrielli v Cornazzani*, 135 AD2d 340, 342) or for creating an amicable atmosphere for negotiations to proceed (*see*, *Buck v Cimino*, 243 AD2d 681, *lv denied* 91 NY2d 807; *Salzano v Pellillo, supra*). To the contrary, plaintiff got into an argument with Amyot in front of Casner in which both men were yelling loudly at each other. There is no real dispute that this argument was genuine, as opposed to a feigned attempt on Amyot's part to terminate their relationship in bad faith as a ploy to avoid paying commission (*see*, *Friedland Realty v Piazza*, 273 AD2d 351, 351-352; *Buck v Cimino, supra*; *Werner v Katal Country Club*, 234 AD2d 659; *O'Connell v Rao*, 70 AD2d 982, 983, *lv denied* 48 NY2d 609). Moreover, the record demonstrates that this argument culminated in defendants severing their ties with plaintiff.[2] There is also no dispute that, following the argument, defendants had no way of contacting the Casners about the farm and, in fact, did not contact them (*compare*, *O'Connell v Rao, supra*). Rather, it was the Casners who initiated the subsequent contact by showing up at defendants' home unannounced after their first choice of properties fell through (*see*, *Bob Howard, Inc. v Baltis*, 178 AD2d 740, 741, *lv denied* 79 NY2d 757). Even on this occasion, no commitments were made by defendants or terms discussed. Under these circumstances, we agree with Supreme Court's finding that plaintiff was not the procuring cause of the sale.

Mercure, J. P., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, with costs.

---

2. In his own angry words to Casner following the dispute, plaintiff stated that defendants would "never sell that damn farm [and] could sit on it forever."